RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

OCT 09 2018

FILED
DOCKETED
DATE          INITIAL

No. 18-55717

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHELLE FLANAGAN, ET AL.,
*Plaintiffs-Appellants,*

v.

XAVIER BECERRA, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, ET AL.,
*Defendants-Appellees.*

**On Appeal from the United States District Court
for the Central District of California**
No. 2:16-cv-6164-JAK-AS
Hon. John A. Kronstadt, Judge

## AMICUS CURIAE BRIEF FOR CHARLES NICHOLS IN SUPPORT OF NEITHER PARTY

Charles Nichols
Plaintiff-Appellant in the Related Case of Charles Nichols v. Edmund Brown, Jr., et al., No. 14-55873
PO BOX 1302
Redondo Beach, CA 90278
(424) 634-7381
CharlesNichols@Pykrete.info
Amicus Curiae

# TABLE OF CONTENTS

Table of Authorities ............................................................................... i

Identify and Interest of Amicus Curiae........................................................ 1

Argument.................................................................................................. 3

    I.      The Plaintiffs-Appellants do not have standing to challenge California's bans on openly carrying firearms. ............................... 6

    II.     The District Court made multiple errors including the issuance of an advisory opinion on the Second Amendment Open Carry right ...................................................................... 8

    III.    If this Court decides that the Plaintiffs-Appellants have standing to challenge California's Open Carry bans then this appeal is not the case which should decide the Second Amendment Open Carry question................................................. 10

Conclusion ........................................................................................... 13

Statement of Related Cases

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

## **CASES**

*Caetano v. Massachusetts*,
136 S.Ct. 1027 (2016) ................................................................................ 5

*Charles Nichols v. Edmund Brown, Jr., et al.*,
No. 14-55873 ............................................................................... *passim*

*Diamond v. Charles*,
476 U.S. 54 (1986) ..................................................................................... 7

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ................................................................ 2, 5, 7, 9, 13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ................................................................................... 6

*Los Angeles County Bar Ass'n v. Eu*,
979 F.2d 697, (1992) ............................................................................... 12

*McDonald v. City of Chicago*,
561 U.S. 742 (2010) ............................................................................... 5, 7

*Peruta v. County of San Diego*,
824 F.3d 919 (2016) ....................................................................... *passim*

*Robertson v. Baldwin*,
165 U.S. 275 (1897) ................................................................................... 5

*Thomas v. Anchorage Equal Rights Comm'n*,
220 F.3d 1134 (9th Cir. 2000) ................................................................... 6

*Young v. State of Hawai'i*,
No. 12-17808 ................................................................................ 2, 11, 13

## IDENTITY AND INTEREST OF AMICUS CURIAE

Charles Nichols is the first, and only, person to ever challenge California's Open Carry bans. On April 20, 2015, Chief Judge Thomas granted Mr. Nichols' motion to file an Amicus brief in the en banc rehearing of Edward Peruta et al., Plaintiffs - Appellants, v. County of San Diego; et al., Defendants - Appellees, State of California (Intervenor - Pending) No. 10-56971 - *Peruta v. County of San Diego*, 824 F.3d 919 (2016). A motion was necessary because the Plaintiffs-Appellants withheld their consent in *Peruta*. In this appeal, *Flanagan*, all parties have given their consent to Mr. Nichols filing an Amicus brief.

Then, as now, Mr. Nichols is the only one who argues in support of the Second Amendment right to openly carry (Open Carry) firearms for the purpose of lawful self-defense in the curtilage of his home, on his private residential property, in and on his motor vehicles, including any attached camper or trailer (regardless of whether or not they are a temporary or permanent residence) and in non-sensitive public places.

The Plaintiff-Appellants in this case (*Flanagan*) do not seek to openly carry a firearm anywhere, for any purpose. In *Flanagan*, the Plaintiffs-Appellants argue that California can ban Open Carry in favor of concealed carry, just as they argued in *Peruta*.

Mr. Nichols has a related case on appeal, Charles Nichols v. Edmund Brown, Jr., et al., No. 14-55873, which seeks to overturn the 1967 Black Panther ban on openly carrying loaded firearms (former California Penal Code ("PC") section 12031, now codified as PC 25850 in part) as well as seeking to overturn California's bans on openly carrying unloaded concealable firearms (e.g., handguns) PC 26350, and California's bans on openly carrying unloaded firearms which are not concealable (e.g., rifles and shotguns) PC 26400, which went into effect on January 1, 2012 & 2013, respectively.

1

Mr. Nichols' appeal also challenges the constitutionality of a permit requirement to openly carry loaded handguns PC 26150 and PC 26155, and their ancillary statutes including, but not limited to, the restriction on the issuance of handgun Open Carry licenses to persons who reside in counties with a population of fewer than 200,000 people, and restricting the validity of those licenses to the county of issuance. Mr. Nichols seeks both prospective injunctive and declaratory relief including, but not limited to, these sections of the California Penal Code.

Mr. Nichols is not now, and has never been, an attorney. Nonetheless, he was granted the very rare opportunity to argue his appeal before a three-judge panel. Mr. Nichols' appeal was argued and submitted for a decision on February 15, 2018.

On February 27, 2018, the three-judge panel assigned to Mr. Nichols' appeal issued an order vacating its submission of *Nichols v. Brown* "[P]ending issuance of a decision in *Young v. State of Hawai'i*, No. 12-17808." The decision in *Young* was published on July 24, 2018. As the Order said *decision* and not *Mandate*, *Nichols* is presumably under submission for a decision.

Mr. Nichols opposes the carrying of weapons concealed except for the limited exceptions to the 19th century prohibitions recognized in *District of Columbia v. Heller,* 554 U.S. 570 (2008) such as the home, and for travelers while actually on a journey.

## ARGUMENT

Pursuant to F.R.A.P 29-2(a)(c)(2) "all parties have consented to its (this brief) filing."

On September 21, 2018, Defendant-Appellee California Attorney General Becerra filed a petition for initial hearing en banc. Given that both he and the Plaintiffs-Appellants argue that California can ban Open Carry, and given that the Plaintiffs-Appellants lack standing to challenge the California Open Carry bans, why wouldn't the State make this attempt to bypass *Nichols*? After all, if the Attorney General were to draw a panel of judges in this appeal who hold that Open Carry is the right guaranteed by the Constitution then he can always play his "lack of standing card."

On December 14, 2016, *Nichols* filed a petition for initial hearing en banc. On October 10, 2017, the Court issued an Order denying Mr. Nichols' petition for initial hearing en banc.

The Attorney General made no mention of *Nichols* in his petition in *Flanagan*. *Nichols* is a pure Open Carry case, as it always has been, and it always will be. Unlike *Flanagan*, *Nichols* also stated in his operative complaint, and argued again on appeal, a home based challenge, the curtilage of his home.

Under California law, Mr. Nichols is prohibited from stepping even one inch outside the door to his home with a loaded firearm carried for the purpose of lawful self-defense because he resides in an incorporated city. The *Flanagan* Plaintiffs-Appellants referenced in their opening brief at page 5, Cal. Fish & Game Code § 3004(a) which permits residents of unincorporated county territory to carry loaded firearms in the curtilage of their home, on their private property and "within 150 yards of a barn or other outbuilding used in connection with an occupied dwelling house, residence, or other building…"

3

We do not know if any of the *Flanagan* plaintiffs reside in unincorporated county territory or in incorporated cities. What we do know is that they own handguns ¶14 of Operative Complaint, that they are residents of Los Angeles County ¶15, and that all of the natural born plaintiffs applied for, and were denied, concealed carry permits by the Los Angeles County Sheriff, ¶¶16-19.

There is no mention of their having applied for a concealed carry permit from their local police chief pursuant to PC 26155. There is just their denial of permits by the County Sheriff pursuant to PC 26150.

The Defendant-Appellees in *Nichols*, Governor Brown and Attorney General Becerra (both sued solely in their official capacity) have drawn a line where the Second Amendment right to keep and bear arms ends, and that line is at the doors to our homes, and not even one inch outside of our homes.

Moreover, *Nichols* has an as-applied challenge which included the undisputed facts that he has a well documented (written) death threat against him, which the Los Angeles County District Attorney would not prosecute and which the Los Angeles County Sheriff would not make an arrest about because their position is that someone who said he was going to shoot Mr. Nichols and called upon others to track him down and shoot him did not make a criminal threat in violation of California law because he did not use the word "kill."

In *Nichols*, it is an undisputed fact that concealed carry substantially burdens Mr. Nichols ability to defend himself even if he lived in a jurisdiction which issues concealed carry permits and even if he had a concealed carry permit (he doesn't).

Finally, *Nichols* did not limit his challenges to the Second Amendment, unless the Court finds it impossible to decide his Second Amendment challenge as well as decide his other challenges under the Federal Constitution (the State of California conceded during oral argument that the District Court did not have the

authority to dismiss *with prejudice* Mr. Nichols claims under the California Constitution).

The California Rifle and Pistol Association, Inc., (CRPA) is a Plaintiff-Appellant in this case and the CRPA is the official California state organization of the National Rifle Association, Inc., (NRA). The NRA helped write, and endorsed the passage of "The Mulford Act of 1967," which included the ban on openly carrying loaded firearms in public (PC 12031 since renumbered to PC 25850, in part). The CRPA was also a Plaintiff-Appellant in *Peruta v. County of San Diego*, 824 F.3d 919 (2016) in which the CRPA argued that states can ban Open Carry in favor of concealed carry.

The CRPA became a plaintiff in *Peruta* on April 21, 2010. For nearly a decade now, the CRPA has been fighting to uphold California's Open Carry bans.

Were this Court to grant the petition for initial hearing en banc in this appeal after denying *Nichols'* petition, particularly in light of both sides opposition to Open Carry here, the impropriety of that grant could not adequately be described in words.

The Plaintiffs-Appellants raise two questions on appeal. Both questions are important questions but they are also questions which cannot be answered by any Federal court without the court issuing an advisory opinion as to the questions, and without issuing a decision which conflicts with the en banc decisions in *Peruta v. San Diego*, 824 F.3d 919 (2016) en banc (cert denied), the Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), *McDonald v. City of Chicago*, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), and *Caetano v. Massachusetts*, 136 S.Ct. 1027, 194 L. Ed. 2d 99 (2016) per curiam and *Robertson v. Baldwin*, 165 U.S. 275, 282 (1897), if the Court were to hold that Open Carry can be banned in favor of concealed carry as the *Flanagan* Plaintiffs-Appellants contend.

## I. The Plaintiffs-Appellants do not have standing to challenge California's bans on openly carrying firearms.

Nowhere in the record will the Court find any articulated plan, let alone a concrete plan, by any of the Plaintiffs-Appellants to violate any California law which restricts or prohibits the Open Carry of firearms for the core, lawful purpose of self-defense or, for that matter, any purpose, anywhere or anytime.

Article III of the Constitution empowers Federal courts to adjudicate only "live cases or controversies," not "to issue advisory opinions [or] to declare rights in hypothetical cases." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000).

*Nichols* did the heavy work in establishing standing to challenge California's Open Carry bans and the state has conceded that *Nichols* has standing.

This Court must "[L]ook to whether the plaintiffs have articulated a concrete plan to violate the law in question…" *Thomas* at 1139. The natural born *Flanagan* Plaintiffs-Appellants have not articulated a concrete plan (or any plan) to violate any law, let alone California's Open Carry bans. Indeed, in their depositions several of them seem to have disavowed any desire at all to openly carry firearms.

The CRPA does not have standing either. Associational standing requires that the CRPA show that affected interests of members must be "germane to the organization's purpose." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

The *purpose* of the CRPA for nearly all of this decade has been to obtain "shall issue" concealed carry permits for its members while at the same time upholding California's ban on Open Carry under the bizarre legal theory that California can ban Open Carry without violating the Second Amendment and having done so, the government must now issue concealed carry permits without its members having to

show that they have "good cause" to be issued a permit to carry loaded handguns concealed in public.

Despite what the CRPA and its parent organization, the NRA, tell the public and press, the CRPA places no value on the Second Amendment Open Carry right defined in *Heller* and applied against all states and local governments in *McDonald*.

The CRPA greatly values upholding California's bans on Open Carry under the discredited legal theory that the State of California's destruction of the Second Amendment right, which is to openly carry firearms, in case of confrontation, for the core lawful purpose of self-defense, somehow creates a right to concealed carry permits under the Second Amendment despite the explicit holding of *Heller* and *McDonald* that the 19th century prohibitions on concealed carry do not violate the Second Amendment of the United States Constitution.

Ultimately, "Article III requires more than a desire to vindicate value interests." *Diamond v. Charles*, 476 U.S. 54, 66 (1986). Because the CRPA has not made, and cannot make, a showing that defense of the Second Amendment Open Carry right defined in *Heller* is germane to the CRPA's purpose, it lacks standing to challenge California's Open Carry bans, even if it wanted to challenge them, which it doesn't, and didn't in this case or in *Peruta*.

The natural born Plaintiffs-Appellants applied for and were denied concealed carry permits pursuant to PC 25150 by the Defendant-Appellee the Los Angeles County Sheriff (sued in his official capacity). This circuit has already held "that the Second Amendment does not preserve or protect a right of a member of the general public to carry concealed firearms in public." *Peruta* at 924.

7

## II. The District Court made multiple errors including the issuance of an advisory opinion on the Second Amendment Open Carry right.

As a purpose of an Amicus brief is to assist the court in areas not touched on or poorly argued by the parties as opposed to making duplicative arguments, this section does not purport to be an exhaustive list of errors made by the district court.

There are a couple of errors made by the district court which were not raised in the Appellants' Opening Brief which should not be overlooked.

It is difficult to say which of the errors made by the district court was the worst. This is the most obvious candidate: "The legislative history of California's open-carry laws clearly provides that their purpose is to promote public safety." Document 81, page 8, section 2(a) ¶2.

The legislative history of the Black Panther ban on openly carrying loaded firearms, which was enacted in 1967, shows that its motivation was racial animus.

A F.R.A.P 28(j) letter was filed in *Nichols* (Dkt 91) coinciding with the 50th anniversary of the enactment of that ban. The letter contains 66 pages of documents obtained from the California State Archives which were submitted as evidence in *Nichols* as to the racial motivation behind the enactment of California's Loaded Open Carry ban (formerly PC 12031, now PC 25850 in part).

> "The district court recognized that *Nichols* had submitted evidence proving the improper motivation behind the Mulford Act of 1967 of which California Penal Code section 25850 is a part. See Attachments 3-71. But failing to show that the law was disproportionately enforced and because the language is race neutral, the court declined to apply strict scrutiny. Attachments 1 ¶1 and 2 [fn] 11."

*Nichols* would subsequently submit evidence to the district court that PC 12031/PC 25850 was, and is, disproportionately enforced against minorities.

8

If the district court is to be taken at its word that it truly looked at the legislative history behind the Black Panther Open Carry ban then this Court must reverse the decision of the district court in regards to PC 25850 and remand it with instructions that racial animus fails any standard of judicial review.

Similarly, the legislative history of the Unloaded Open Carry bans proves that they were enacted not because people who openly carry unloaded firearms present any danger to the public but because the legislative finding was that it is police officers who are the danger in that they might react unlawfully, in violation of the Fourth Amendment, by shooting persons and those around them for the mere carriage of firearms, which is something this circuit categorically prohibits and which was extensively argued in *Nichols* Opening brief but, tellingly, not argued at all in the *Flanagan* Opening brief, and therefore waived by them.

Needless to say, the Appellees in *Nichols* could not cite any case in which the Supreme Court or any Federal circuit has upheld a law because of hypothetical and speculative unlawful actions of police.

The district court cited the 2nd circuit decision in *Kachalsky* in the first sentence of the last paragraph on page 11 of his Order.

Contrary to what Judge Kronstadt claimed, no party in *Kachalsky* (2nd circuit – New York) "challenged the laws restricting open carry." The very first sentence of the *Kachalsky* 701 F.3d 81 (2012) decision limited the scope of that decision to the "proper cause" requirement to obtain a license to carry a concealed handgun in public. Furthermore, the *Kalchasky* Court admonished the plaintiffs in footnote 13 for arguing that states may ban Open Carry in favor of concealed carry, an argument that Court noted conflicted with *Heller's* citations to *Chandler* and *Reid*.

Although the *Flanagan* appellants cite *Kachalsky* four times in their opening brief, they somehow overlooked this, no doubt because it contradicts their argument that states can ban Open Carry in favor of concealed carry.

9

Similarly, the *Woollard* (4th circuit – Maryland) and *Drake* (3rd circuit – New Jersey) decisions were limited to concealable firearms as Maryland, New York, and New Jersey do not have state laws prohibiting the Open Carry of long guns in public (loaded or unloaded) and none of the plaintiffs in those cases had brought any Open Carry challenge.

To the extent that the district court issued a decision on California's laws prohibiting Open Carry, it was an advisory decision given that the *Flanagan* plaintiffs do not have standing to challenge California's Open Carry bans.

Moreover, Judge Kronstadt said in ¶2 of B.1 on page 7 of his Summary Judgment Order that "[T]his question [Open Carry] need not be addressed…" and so it is unclear as to whether or not the district court even upheld California's Open Carry bans, which is sufficient reason to reverse and remand the decision of the district court as to Open Carry.

### III. If this Court decides that the Plaintiffs-Appellants have standing to challenge California's Open Carry bans then this appeal is not the case which should decide the Second Amendment Open Carry question.

The US Supreme Court has already held that the 19th century prohibitions on concealed carry do not infringe on the right to keep and bear arms. *Peruta* did not consider the Open Carry question because that question was not before the court, and it is still not before this Court in *Flanagan*.

"If there is a Second Amendment right of a member of the general public to carry a firearm openly in public, and if that right is violated, the cure is to apply the Second Amendment to protect that right. The cure is not to apply the Second Amendment to protect a right that does not exist under the Amendment." *Peruta* at 942.

10

*Nichols* seeks to administer that cure. The *Flanagan* Plaintiffs-Appellants do not. They, and the State of California, defend the disease.

On July 3, 2013, *Nichols* filed an appeal to the denial of his preliminary injunction (dismissed as moot on June 10, 2014). The CRPA filed an opposed Amicus brief in which it asked for *Nichols'* appeal to be stayed. The CRPA brief was opposed by both Mr. Nichols and the State of California. In the words of the state's opposition (Dated September 23, 2013):

> "CRPAF, in its proffered amicus curiae brief, does not address the substantive issues of the present appeal. Instead, CRPAF makes two requests: one, that the appeal be stayed pending resolution of other appeals currently before the U.S. Court of Appeals, Ninth Circuit; and, two, that CRPAF be given the opportunity to file a further brief herein, following resolution of those other matters, as well as to present oral argument. The Attorney General opposes both requests, as explained below.
>
> As to CRPAF's request to stay the present appeal, CRPAF has failed to show any good cause for doing so. Although CRPAF asserts that other pending cases relate to the present case, CRPAF fails to explain why resolution of those proceedings will likely be dispositive of the present appeal, which concerns whether the district court abused its discretion in denying appellants' motion for a preliminary injunction."

In spite of the stay being opposed by both parties to the appeal, and despite the CRPA brief being devoid of any substantive reason why Mr. Nichols' preliminary injunction appeal should be stayed, Mr. Nichols' preliminary injunction appeal was stayed until final judgment. Mr. Nichols' appeal of final judgment was stayed pending the en banc decision in Peruta.

A decision has now been published in the related case of *Young v. Hawaii* No. 12-17808. Mr. Young filed his lawsuit in the district court on June 12, 2012, which was more than six months after Mr. Nichols filed his case in the district court. As luck would have it, Mr. Young's appeal was argued and submitted for a

decision three days before *Nichols*, which makes the published decision of July 24, 2018, binding on all Federal judges in this circuit including the three-judge panel assigned to *Nichols* as well as to any three-judge panel which might be assigned to *Flanagan*.

Unlike the Plaintiffs-Appellants in *Flanagan*, Mr. Young did not, and does not seek to ban Open Carry. Mr. Young asked for, and was denied, separate licenses to openly carry and to concealed carry of a handgun in public.

If Mr. Young's appeal is taken en banc then Mr. Young has standing to argue that he has the right to carry handguns in public, both openly and concealed. The *Flanagan* Plaintiffs-Appellants do not have standing. Indeed, one could argue that they do not have standing to bring a concealed carry challenge even absent the *Peruta* decision, as they don't claim there is a right to concealed carry either.

There are only two ways in which firearms can be carried, openly or concealed. Some firearms (e.g., rifles and shotguns) are not concealable firearms under California law and therefore one cannot be punished for carrying them concealed, even if it were to possible to hide a rifle or shotgun in one's pocket or beneath his coat.

The legal argument in both *Flanagan* and *Peruta* made by the Plaintiffs-Appellants is that there is no right to Open Carry and there is no right to carry. If they are to be believed then that logically entails that there is no right to carry firearms at all. It also raises the question of whether *Flanagan* has standing to raise a concealed carry challenge.

Standing is a question this court has a sua sponte duty to decide before proceeding on the merits of the *Flanagan* case. "[S]tanding is a threshold question which we must resolve before proceeding to the merits. *Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697, 700 (1992).

## CONCLUSION

The decision of the District Court should be partially affirmed as to concealed carry pursuant to *Peruta*, partially reversed as to Open Carry pursuant to *Young*, or stayed until there is a final decision in the Related Case of Charles Nichols v. Edmund Brown, Jr., et al., No. 14-55873 at which point *Flanagan* would likely be moot.

By summarily affirming, or affirming, the district court holding as to the Plaintiffs-Appellants concealed carry claims they can immediately file a petition for an en banc appeal or file a concealed carry cert petition with the United States Supreme Court, which is, after all, they only reason the *Flanagan* case was ever filed given their opposition to Open Carry which the *Heller* court said "perfectly captured" the meaning of the right to keep and bear arms at 2809.

If any appeal must be taken en banc to decide the Open Carry question left Open by *Peruta* then it is *Nichols v. Brown* as his is the only appeal which raises a pure Open Carry question and which is devoid of any standing problems, which plague *Flanagan* or the procedural problems which necessitated a remand in *Young* for further proceedings.

Finally, if the en banc petition in *Young* is denied, and the petition for an initial hearing en banc in *Flanagan* is denied then there is nothing which prevents the State of California defendants from filing an en banc petition in *Nichols* when the time comes.

Dated: October 5, 2018                              Respectfully submitted,

                                                    CHARLES NICHOLS
                                                    Amicus Curiae

                                                    /s/ Charles Nichols

## 28-2.6. Statement of Related Cases

There are two related cases:

*Young v. State of Hawai'i,* No. 12-17808, decision published July 24, 2018, en banc petition pending.

*Charles Nichols v. Edmund Brown, Jr., et al.*, No. 14-55873, argued and submitted on February 15, 2018. On February 27, 2018, the three-judge panel assigned to Mr. Nichols' appeal issued an order vacating its submission of *Nichols v. Brown* "[P]ending issuance of a decision in *Young v. State of Hawai'i*, No. 12-17808." The decision in *Young* was published on July 24, 2018. As the Order said *decision* and not *Mandate*, *Nichols* is presumably under submission for a decision.

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitation, Type-Face Requirements, and Type-Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 9th Cir. R. 29-2 because it contains 3,918 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 14-point Times New Roman.

Dated: October 5, 2018

/s/ Charles Nichols
Charles Nichols
Amicus Curiae
PO Box 1302
Redondo Beach, CA 90278
(424) 634-7381

9th Circuit Case Number(s) | 18-55717

NOTE: To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | October 5, 2018 |.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | /s/ Charles Nichols

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | |.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format) |

# CERTIFICATE FOR BRIEF IN PAPER FORMAT

*(attach this certificate to the end of each paper copy brief)*

9th Circuit Case Number(s): 18-55717

I, Charles Nichols, certify that this brief is identical to the version submitted electronically on [date] October 5, 2018.

Date    October 6, 2018

Signature   s/ Charles Nichols

(either manual signature or "s/" plus typed name is acceptable)