| | |
|---|---|
| **ROB BONTA**<br>*Attorney General* | **State of California**<br>**DEPARTMENT OF JUSTICE**<br>455 GOLDEN GATE AVENUE, SUITE 11000<br>SAN FRANCISCO, CA 94102-7004<br><br>Telephone: (415) 510-3896<br>E-Mail: Teresa.ReedDippo@doj.ca.gov |

January 25, 2023

Molly Dwyer, Clerk of the Court
United States Court of Appeals for the Ninth Circuit
P.O. Box 193939
San Francisco, CA 94119-3939

**RE: Supplemental Letter Brief in *Flanagan v. Bonta*, Case No. 18-55717**

Dear Ms. Dwyer:

This letter responds to the Court's December 23, 2022 order directing the parties to file supplemental letter briefs. As discussed below, this case is now moot, the voluntary cessation doctrine does not save the case from mootness, and this Court should vacate the district court's judgment and direct it to dismiss.

## I. THIS CASE IS MOOT

1. As the Attorney General explained in his July 2022 Rule 28(j) letter (Dkt. 64), this case is now moot. Article III requires that an "'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013). The plaintiffs here challenge a California statutory requirement that applicants demonstrate "good cause" as a condition of securing a concealed-carry license. In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the United States

January 25, 2023
Page 2

Supreme Court explicitly indicated that the requirement challenged here violates the Second Amendment. *See id*. at 2124 & n.2 (identifying California as one of five States that have "analogues to [New York's] 'proper cause' standard," which the Court struck down under the Second Amendment); *see also id.* at 2161-2162 (Kavanaugh, J., concurring) (similar). The Attorney General issued a legal alert the day after the *Bruen* decision announcing that *Bruen* "renders California's 'good cause' standard to secure a permit to carry a concealed weapon in most public places unconstitutional" and instructing licensing authorities that they "may no longer require a demonstration of 'good cause' in order to obtain a concealed carry permit." Office of the Attorney General, *Legal Alert* at 1 (June 24, 2022), bit.ly/3hRzlYn. Thereafter, the Sheriff informed this Court that he no longer requires applicants to show good cause as a condition of securing a license "[i]n accordance with the June 24, 2022 legal alert issued by Attorney General Bonta[.]" Dkt. 65. In light of those developments, "the issues presented are no longer 'live,'" and there is "no longer a 'Case' or 'Controversy' for purposes of Article III.'" *Already*, 568 U.S. at 91; *see* Appellants' Opening Br. 16 (plaintiffs "seek only to carry handguns . . . *in some manner, either* concealed *or* openly, as countless Californians in counties with less restrictive 'good cause' regimes" do).

January 25, 2023
Page 3

2.  The Court directed the parties to address whether the voluntary cessation doctrine saves this case from mootness. Dkt. 72. It does not. The voluntary cessation doctrine is intended to prevent gamesmanship by defendants who "engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where [they] left off, repeating this cycle" until they achieve "all [their] unlawful ends." *Already*, 568 U.S. at 91. As the name suggests, however, the doctrine only applies if a defendant's decision to stop engaging in the challenged conduct was "voluntary." Even then, a federal court lacks jurisdiction under Article III if the defendant demonstrates "that 'the challenged behavior cannot reasonably be expected to recur.'" *Brach v. Newsom*, 38 F.4th 6, 12 (9th Cir. 2022) (en banc), *petition for cert. filed*, No. 22-250 (Sept. 13, 2022).

a.  Here, the defendants did not make a "voluntary" decision to halt the challenged conduct. They vigorously defended California's good-cause requirement in the district court and this Court until the day the Supreme Court issued the *Bruen* decision. When *Bruen* made clear that the requirement was unconstitutional, the Attorney General promptly and publicly acknowledged that California's good-cause requirement was unconstitutional, and instructed state officials (including the Sheriff) that they may no longer enforce it. *See supra* p. 2. That decision was compelled by the ruling in *Bruen*. And as this Court has

previously explained, "'legally compelled' cessation" of allegedly unlawful conduct "is not 'voluntary' for purposes of this exception to the mootness doctrine." *Sea-Land Serv., Inc. v. Int'l Longshoremen's & Warehousemen's Union, Locals 13, 63, & 94*, 939 F.2d 866, 870 (9th Cir. 1991).

The circumstances here are similar to those in *Sea-Land Service* and other cases in which this Court has held that it lacked Article III jurisdiction. In *Sea-Land Service*, an employer sought a judgment from a district court in California requiring a union to comply with a National Labor Relations Board ruling. 939 F.2d at 867-869. But the D.C. Circuit had already granted the employer the same relief, and the union announced that it intended to comply with that ruling. *Id.* at 870. This Court held that the case was moot and the voluntary cessation doctrine did not apply because the union's change in conduct was "'legally compelled.'" *Id.* (quoting *Enrico's, Inc. v. Rice*, 730 F.2d 1250, 1253 (9th Cir. 1984)). Similarly, in *Enrico's*, the state-agency defendant discontinued the challenged pricing policy after a final decision in a separate state-court proceeding held that the policy was unlawful. 730 F.2d at 1252-1253. Recognizing that the "agency must follow" that precedent, and that the agency "acted in accordance with its legal obligations when it discontinued the pricing scheme," this Court held that the discontinuance "was not voluntary, but legally compelled." *Id.* at 1253; *see also*

January 25, 2023
Page 5

*Lombardo v. Warner*, 481 F.3d 1135, 1136-1137 (9th Cir. 2007) (en banc) (holding that constitutional challenge to a subdivision of a state statute was moot in light of intervening state supreme court decision, which held that the underlying statutory scheme was unconstitutional).

Although no court has issued a final judgment holding California's good-cause requirement unconstitutional, the Supreme Court's decision in *Bruen* has the same practical effect. As noted, the Court specifically identified California's law as one of six state statutes that violate the Second Amendment. *See Bruen*, 142 S. Ct. at 2124 & n.2. The parties agree that *Bruen* renders the challenged California provision unconstitutional. Defendants are duty-bound to comply with that ruling. *See generally* Cal. Const. art. XX, § 3 (oath of office); *Marbury v. Madison*, 1 Cranch 137, 177 (1803). The "voluntary cessation rubric does not apply" in these circumstances: the "defendants changed their position, not because of this lawsuit, but because [of] the Supreme Court's decision" that this type of good-cause requirement is unconstitutional. *Hamidi v. Serv. Emps. Int'l Union, Local 1000*, 386 F. Supp. 3d 1289, 1296 (E.D. Cal. 2019) (voluntary cessation doctrine did not apply where California state defendants changed position after a "broad new" Supreme Court decision held the relevant policy unconstitutional in case involving Illinois statute), *aff'd*, 2021 WL 4958855, at *1-*2 (9th Cir. Oct. 26, 2021).

January 25, 2023
Page 6

b. Even courts that have addressed comparable situations under the voluntary cessation rubric have held that they nonetheless lack Article III jurisdiction. Those courts recognized that where—as here—intervening Supreme Court precedent held that a challenged policy was unconstitutional, there was no reasonable expectation that the defendants would re-instate that policy in the future.

For example, in *Hartnett v. Pennsylvania State Education Ass'n*, 963 F.3d 301, 304-305 (3d Cir. 2020), the plaintiffs challenged a Pennsylvania statute authorizing a union to deduct "agency fees" from their paychecks even though they did not belong to the union. While their suit was pending, the Supreme Court held that a similar Illinois statute violated the First Amendment. *See Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2459-2461 (2018). On the "very day the Supreme Court issued" that decision, the unions in *Hartnett* announced that they would no longer collect fees from non-union members, and the State "notified public-sector employers that they could no longer collect agency fees." 963 F.3d at 305. The Third Circuit held that the case for mootness was "especially strong." *Id.* at 307. The unions had "immediately stopped collecting agency fees" after the intervening Supreme Court decision and "conceded that Pennsylvania's agency-fee arrangement violates the First Amendment." *Id.* No party "question[ed] whether public-sector unions can still

January 25, 2023
Page 7

collect agency fees from nonmembers." *Id.* at 308. The case was moot because there was "no reasonable likelihood that the unions will try to collect agency fees from the teachers ever again." *Id.* at 307; *see also Hamidi*, 386 F. Supp. 3d at 1296-1297 (reaching same conclusion in alternative analysis of voluntary cessation doctrine), *aff'd*, 2021 WL 4958855, at *1 ("We agree that 'subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.'"); *Gabriele v. Serv. Emps. Int'l Union, Local 1000*, 2021 WL 4959427, at *1 (9th Cir. Oct. 26, 2021) (same).

More recently, federal courts of appeals have relied on intervening Supreme Court precedent as an important factor in holding that there was no reasonable expectation that government defendants would re-impose certain COVID-19 restrictions on in-person worship. For example, in *Hawse v. Page*, 7 F.4th 685, 693 (8th Cir. 2021), the Eighth Circuit explained that "[a]t the outset of the pandemic, it was not clear how the [First Amendment] would apply to restrictions on religious gatherings." *Id.* Although "it was generally understood that churches hosting religious services could not be treated less favorably than other venues that held gatherings of large groups of people in close proximity for extended periods of time, the contours of this neutrality principle were not well defined." *Id.* During the pandemic, however, the Supreme Court ruled "that the relevant

comparison extends beyond movie theaters and lecture halls to hardware stores, hair salons, acupuncture facilities, and garages." *Id.* The Eighth Circuit relied on those intervening decisions (among other factors) in holding that the case before it was moot because there is now "no reasonable expectation that the [government defendants] would flout the Supreme Court's intervening pronouncements on equal treatment between religious exercise and comparable secular activity." *Id.*; *see also Clark v. Governor of N.J.*, 53 F.4th 769, 780 (3d Cir. 2022) (same); *Calvary Chapel of Bangor v. Mills*, 52 F.4th 40, 48-51 (1st Cir. 2022) (same); *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 162-165 (4th Cir. 2021) (same).

Similarly, here, the Attorney General and the Sheriff defended California's good-cause requirement until the Supreme Court issued its decision in *Bruen*. Immediately after that decision, however, they conceded that the requirement now violates the Second Amendment under *Bruen* and stopped enforcing on that basis. There is no reasonable prospect that they will re-impose that requirement. Indeed, the case for mootness is even stronger here than it was in the above cases because *Bruen* specifically identified California's good-cause requirement as one of several laws that violated the Second Amendment. *See* 142 S. Ct. at 2124 & n.2.

3. This Court's decision in *Rosebrock v. Mathis*, 745 F.3d 963 (9th Cir. 2014), confirms that the voluntary cessation doctrine does not save this case from

January 25, 2023
Page 9

mootness. *Rosebrock* recognized the presumption that "a government entity is acting in good faith when it changes its policy." *Id.* at 971; *see also Brach*, 38 F.4th at 12-13 (similar). And it identified five non-exhaustive factors bearing on whether a government's voluntary cessation of a policy that is "not reflected in statutory changes" renders a case moot. 745 F.3d at 972 & n.10.[1]

Three of the five *Rosebrock* factors unambiguously support the conclusion that this case is moot. As to the first factor, defendants have announced that they will no longer enforce the good-cause requirement in "language that is 'broad in scope and unequivocal in tone.'" *Rosebrock*, 745 F.3d at 972; *see supra* p. 2 (reviewing the Attorney General's Legal Alert and the Sheriff's Rule 28(j) letter). As to the second factor, the change in policy "fully 'addresses all of the

---

[1] As *Rosebrock* recognized, "'[a] statutory change is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed.'" 745 F.3d at 971 (ellipsis omitted). Here, the California Legislature considered a bill that would have updated the State's gun regulations after *Bruen*, including by repealing the good-cause requirement, during its session that ended on September 1, 2022. *See* S.B. 918, 2021-2022 Reg. Sess. (Cal. 2022), bit.ly/3WKqUNa. Because that bill included an urgency clause that would have allowed the bill to take effect immediately, its passage required a two-thirds vote of each house of the Legislature. *Id.* (Sec. 31). The bill ultimately fell one vote short of that threshold in the Assembly. *See* S.B. 918, Votes, bit.ly/3XOXJZQ. The Legislature is currently considering a new bill that would repeal the good-cause requirement. *See* S.B. 2, 2023-2024 Reg. Sess. (Cal. 2022), bit.ly/3C6OGuT.

January 25, 2023
Page 10

objectionable measures that the Government officials took against the plaintiffs in the case.'" *Rosebrock*, 745 F.3d at 972 (brackets omitted). And as to the fifth factor, defendants have not "engaged in conduct similar to that challenged by the plaintiff[s]" since they announced the cessation of the challenged policy. *Id.*

The remaining two factors also lend support to the conclusion that this case is moot. As to the third factor, although this particular case was not "the catalyst for [defendant's] adoption of the new policy," *Rosebrock*, 745 F.3d at 972, the catalyst was a Supreme Court decision resolving a nearly identical issue—which expressly indicated that California's good-cause requirement was unconstitutional. *See Bruen*, 142 S. Ct. at 2124 & n.2. With respect to the fourth factor, the length of time since defendants changed their conduct, *see Rosebrock*, 745 F.3d at 972, the Attorney General promptly directed state officials to stop enforcing the good-cause requirement the day after the *Bruen* decision and both defendants have adhered to that directive ever since.

What is more, *Rosebrock* "emphasiz[ed]" that the five considerations it identified "do not provide an exhaustive or definitive list." 745 F.3d at 972 n.10.[2]

---

[2] *See also Brach*, 38 F.4th at 12-15 (holding challenge to California restrictions on in-person instruction moot without discussing all five *Rosebrock* factors); *Fikre v. FBI*, 904 F.3d 1033, 1039 (9th Cir. 2018) ("[T]here is no bright-line rule for application of the voluntary cessation doctrine[.]").

January 25, 2023
Page 11

Instead, the controlling inquiry is whether the defendants have demonstrated that the "challenged conduct cannot reasonably be expected to recur." *Id.* at 972. Here, binding Supreme Court precedent prevents defendants from returning to the challenged policy. While plaintiffs assert that defendants or their successors "could resume enforcement" of the good-cause requirement "at any time" as long as "the law [is] still on the books," Dkt. 66, such "speculative contingenc[ies]" are not "enough to skirt mootness," *Brach*, 38 F.4th at 14. The only circumstances under which defendants could resume enforcement of the good-cause requirement would be if the Constitution were amended or the Supreme Court overruled *Bruen*. There is no reasonable expectation that either of those events will occur.

**II.   THE COURT SHOULD DISMISS THE APPEAL AS MOOT AND VACATE THE DISTRICT COURT'S JUDGMENT ON THAT BASIS**

Because this case became moot "during the course of an appeal and 'pending a decision on the merits,'" this Court should follow the "'established practice [which] is to reverse or vacate the judgment below and remand with a direction to dismiss.'" *City & County of S.F. v. Garland*, 42 F.4th 1078, 1088 (9th Cir. 2022) (quoting *United States v. Munsingwear*, 340 U.S. 36, 39 (1950)) (brackets omitted); *see also NASD Disp. Resol., Inc. v. Jud. Council of Cal.*, 488 F.3d 1065, 1068 (9th Cir. 2007) ("Under the '*Munsingwear* rule,' vacatur is generally

'automatic' in the Ninth Circuit when a case becomes moot on appeal.").

The supplemental briefing order directed the parties to address whether the Court should follow its "prior practice of 'vacating the judgment of the district court and remanding the case to the district court for further proceedings pursuant to'" *Bruen*, as it has done in several recent cases. Dkt. 72 (brackets omitted). That approach is not necessary or advisable here. As explained above, there is no longer a live controversy between the parties—all agree that *Bruen* requires the defendants to stop enforcing California's good-cause requirement. *See supra* pp. 2-5. That makes this case different from the other Second Amendment cases identified in the supplemental briefing order: None of those cases was directly controlled by *Bruen*. They all continued to present live controversies, with the parties disputing the unresolved legality of statutes or policies. And further district court proceedings were necessary to allow the development of evidence and arguments that would enable the courts to resolve outstanding disputes, including by applying the standards announced in *Bruen*.

For example, the plaintiffs in *Duncan v. Bonta* assert that California's restrictions on large-capacity magazines violate the Second Amendment, the Takings Clause, and the Due Process Clause. *See* 19 F.4th 1087, 1095-1096 (9th Cir. 2021) (en banc), *vacated and remanded*, 142 S. Ct. 2895 (2022). *Bruen* does

January 25, 2023
Page 13

not control the answer to any of those questions. See *Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) (*Bruen* does not "decide anything about the kinds of weapons that people may possess"). And as the Attorney General explained in urging the Court to remand in *Duncan*, further proceedings were necessary because *Bruen* "dramatically changed the ground rules with respect to [the *Duncan*] plaintiffs' Second Amendment claim." Supp. Br. at 2, *Duncan v. Bonta*, 9th Cir. Case No. 19-55376, Dkt. 203 (Aug. 23, 2022); *see id.* at 8-9 (remand would allow the parties to develop evidence about whether California's large-capacity magazine restrictions are "consistent with the Nation's historical tradition of firearm regulation" (quoting *Bruen*, 142 S. Ct. at 2130)).

Similar considerations were present in the other cases cited in the supplemental briefing order. With only one exception, those cases did not involve restrictions on carrying firearms in public of the type directly addressed in *Bruen* and at issue here.[3] In the one exceptional case, *Young v. Hawaii*, the "question

---

[3] *See McDougall v. Cnty. of Ventura*, 38 F.4th 1162 (9th Cir. 2022) (en banc) (challenge to closures of gun ranges and gun stores at beginning of pandemic); *Jones v. Bonta*, 47 F.4th 1124, 1125 (9th Cir. 2022) (challenge to restrictions on selling certain firearms to young adults); *Rupp v. Bonta*, No. 19-56004, 2022 WL 2382319, at *1 (9th Cir. June 28, 2022) (restrictions on assault weapons); *Mitchell v. Atkins*, No. 20-35827, 2022 WL 17420766, at *1 (9th Cir. Dec. 2, 2022) (restrictions on selling certain firearms to young adults and non-state residents).

presented" was "whether individuals have a right to carry weapons *openly* in public." 992 F.3d 765, 773 (9th Cir. 2021) (en banc), *vacated and remanded*, 142 S. Ct. 2895 (2022). The Supreme Court did not directly address the constitutionality of open-carry requirements in *Bruen*. *See* 142 S. Ct. at 2124 & n.2 (identifying state laws giving authorities "discretion to deny *concealed-carry licenses*") (emphasis added). Nor did *Bruen* address other legal questions resolved by the en banc panel in *Young*, including the *Young* plaintiff's due process challenge, 992 F.3d at 828, whether the doctrine of prior restraint applies in the Second Amendment context, *id.* at 827-828, and whether the plaintiff had pleaded an as-applied challenge, *id.* at 778-781. Further proceedings were needed to resolve what impact (if any) *Bruen* had on those aspects of the en banc opinion in *Young*. *See* Opp'n to Mot. for Summ. Reversal at 5-7, *Young v. Hawaii*, 9th Cir. Case No. 12-17808, Dkt. 324 (July 11, 2022) (arguing that those parts of the opinion should be "recognized as remaining intact as the law of the case"). By contrast, *Bruen* directly resolves the only dispute presented in this litigation.

If this Court were to conclude that this case somehow continues to present a live controversy, however, the Attorney General would have no objection to the Court vacating the judgment below and remanding "for further proceedings pursuant to [*Bruen*]." Dkt. 72. But that possibility only underscores why this case

January 25, 2023
Page 15

is now moot. Because the parties agree that the challenged policy is unconstitutional under *Bruen*, the only "further proceedings pursuant to *Bruen*" for the district court to undertake would be to enter a judgment that California's good-cause requirement is now unconstitutional and may not be enforced against the plaintiffs. *Cf.* Dkt. 63 at 2 (plaintiffs' Rule 28(j) letter arguing that "[t]here is no need to remand this case to the district court for anything other than to enter judgment in Appellants' favor"). But plaintiffs have already effectively received that relief as a result of defendants' unequivocal decision to comply with *Bruen* and cease enforcement of California's good-cause requirement.

                                              Sincerely,

                                              *s/ Teresa A. Reed Dippo*

                                              TERESA A. REED DIPPO
                                              Deputy Solicitor General

                           For    ROB BONTA
                                              Attorney General

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 18-55717 |

I am the attorney or self-represented party.

**This brief contains** | 3,346 | **words**, including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

● complies with the length limit designated by court order dated | 12/23/2022 |.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Teresa A. Reed Dippo | **Date** | 1/25/2023 |
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** | Rev. 12/01/22